Tomás Molini Ruiz, recurrente, *v.* Comisión Industrial de Puerto Rico y Bernabé Cruz, recurridos.

Núm. 152.—*Sometido:* Diciembre 19, 1938. *Resuelto:* Marzo 29, 1939.

*Lucien Longchamps,* abogado del recurrente; los recurridos no comparecieron.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Este recurso de revisión se rige por la Ley de Indemnizaciones por Accidentes del Trabajo de 1928, según fué posteriormente enmendada (Ley núm. 85 de 1928, Leyes de ese año, pág. 631). La única cuestión envuelta es la relativa a la validez de una transacción celebrada entre un obrero y un patrono no asegurado. Resumidos brevemente, los hechos ocurrieron en el siguiente orden:

Allá para el año 1933, Benjamín Cruz sufrió un accidente que le produjo la muerte. Su padre, Bernabé Cruz, como único beneficiario que de él dependía, radicó la correspondiente solicitud de compensación ante la Comisión Industrial, y se celebró una vista en 5 de marzo de 1937. En 20 de mayo del mismo año el patrono, Tomás Molini Ruiz, y el beneficiario del obrero transigieron la reclamación existente entre ellos por la suma de $700, que fué debidamente pagada al beneficiario. Esta transacción quedó autenticada por *affidavit* núm. 1841 suscrito ante el notario público Ángel Padró.

En abril 19, 1938, la Comisión Industrial dictó resolución sosteniendo la reclamación de Bernabé Cruz, declarando a Tomás Molini Ruiz un patrono no asegurado en violación de la ley, y concediendo una indemnización de $2,000. Luego en 25 de abril de 1938 las partes, por sus abogados, radicaron una estipulación en que hacían constar los términos de la transacción por ellas celebrada y solicitaban que la Comisión dejara sin efecto su decisión y archivara el caso. Por resolución de 20 de mayo de 1938 la Comisión se negó a acceder a la anterior petición, basada en la sección 21 de la Ley núm. 85 de 1928. Después de declararse sin lugar una moción de reconsideración, el peticionario, Tomás Molini Ruiz, radicó el presente recurso de revisión.

La sección 21 de la Ley núm. 85 de 1928, tal como fué enmendada por la Ley núm. 78 de 1931 (Leyes de ese año, pág. 477, 489), dispone:

"Sección 21.—Todo convenio, arreglo o transacción efectuado entre un obrero o un patrono o su asegurador sobre compensación, sobre accidente, enfermedad o muerte, compensables de acuerdo con la presente Ley, serán nulos a menos que fueren sometidos a la aprobación de la Comisión Industrial según se provee en esta Ley; y en el caso de que fueren aprobados tendrán el efecto de relevar al patrono de toda responsabilidad ulterior, o por el accidente, enfermedad o muerte que motivó tal convenio o transacción; *Disponiéndose,* que la Comisión Industrial sólo tendrá facultad para aprobar arreglos o transacciones cuando los términos de los mismos estén de cuerdo con las disposiciones de la presente Ley; *Y disponiéndose, además, que las disposiciones de esta Ley en lo que respecta a convenios no se refieren a aquellos que se celebren entre obreros y patronos que en violación de la Ley no se hayan asegurado en ninguna de las formas previstas en la sección 26, debiendo seguirse en estos casos el trámite que señala la sección 25.*" (Bastardillas nuestras excepto las introducciones a los "Disponiéndose."

El patrono en este caso caía de lleno dentro de los términos del último *Disponiéndose,* toda vez que no estaba asegurado bajo ninguna de las tres formas previstas por el artículo 26. En su consecuencia, de acuerdo con dicha sección, ninguna transacción podía privar a la Comisión de conocer del caso.

La sección 25 de la ley de 1928, supra, según fué enmendada por la Léy núm. 49 de 1930 (Leyes de ese año, pág. 395) lee:

"Sección 25.—En el caso de que ocurriese un accidente a un obrero cuando trabajare para un patrono que en violación de la ley no estuviese asegurado, la Comisión Industrial determinará la indemnización que proceda más los gastos en que incurriere, y certificará su decisión al Tesorero de Puerto Rico, quien impondrá y cobrará al patrono dicha indemnización y 'gastos incurridos y una y otros constituirán un gravamen (*lien*) sobre toda la propiedad del patrono con el mismo efecto legal y prelación que si fuere una contribución impuesta sobre dicha propiedad; *Disponiéndose, sin embargo,* que la Comisión dará tanto al patrono como al obrero en el caso, oportunidad de ser oídos y defender, ajustándose en lo posible a las prácticas observadas por las cortes de distrito; *Y disponiéndose,. además,* que, citadas las partes por el medio que la Comisón adopte, si éstas o cualquiera de ellas no concurriera para ser oídas y defender, se entenderá que ésta o éstas renuncian a su derecho, y la Comisión. podrá fallar el caso en redeldía sin más demora."

La Comisión Industrial citó en su decisión el artículo 21,. supra, el cual por sus propios términos excluye aquellos convenios "*que se celebren entre obreros y patronos que en violación de la Ley no se hayan asegurado en ninguna de las formas previstas en la sección 26, . . .*" Por tanto, conforme hemos indicado, nuestra opinión es que a tenor de la fraseología del artículo 21, las disposiciones de la Ley de 1928 *en lo que respecta a convenios* no se refieren al convenio celebrado en este caso.

Pasaremos ahora a considerar si la transacción celebrada por las partes debe ser reconocida por la Comisión. La sección 25 no hace referencia a convenios o transacciones. ¿Quiere esto decir que fué la intención de la Asamblea Legislativa, en casos de patronos no asegurados, eliminar toda. posibilidad de una transacción o compromiso entre las partes? No se ha presentado alegato o argumento en apoyo de la decisión de la Comisión.

El único caso que hemos podido hallar en esta jurisdicción que trata sobre una cuestión similar es el de *Nicot* v.

*Comisión de Indemnizaciones a Obreros,* 35 D.P.R. 817, resuelto bajo la Ley de Indemnizaciones a Obreros de 1918 (Ley Núm. 10 de ese año, pág. 55). En dicho caso un obrero sufrió un accidente ordinario mientras trabajaba para un patrono no asegurado en violación de la ley. Mientras se hallaba pendiente su reclamación el obrero radicó un escrito solicitando el archivo de los procedimientos fundándose (*a*) en que el caso no estaba comprendido por la Ley de Indemnizaciones a Obreros, y (*b*) en que él había recibido toda la asistencia necesaria de su patrono, reservándose el derecho a instruir un pleito ante la corte correspondiente. De la opinión se desprende que el mismo día el obrero firmó una transacción a virtud de la cual, en consideración a las sumas de $42.50 y $43.50 recibidas, más los gastos médicos incurridos por el patrono, "renunció en absoluto a toda ley que pudiera favorecerle, reconociendo que las sumas recibidas compensaban satisfactoriamente las pérdidas sufridas en virtud del accidente ocurrido." La Comisión se negó a archivar el caso y luego de una amplia vista concedió al obrero una compensación de $500. De la opinión emitida por la Comisión se desprendía que el empleado había transigido el caso bajo la impresión errónea de que él no podía obtener de la Comisión más de las sumas recibidas. La corte de distrito confirmó la indemnización concedida y en apelación este tribunal ratificó la decisión de la corte inferior. Citamos de la opinión emitida por el Juez Asociado Sr. Franco Soto en dicho caso:

"El apelante alega, en síntesis, que la corte inferior cometió error al considerar que la Comisión de Indemnizaciones a Obreros puede actuar sobre un caso en el que el propio interesado desiste de su reclamación por haber sido compensado por su patrono, interviniendo dicho organismo en esa forma en la libre contratación entre ciudadanos, y violándose con ello la Ley Orgánica y la Constitución de los Estados Unidos.

"El artículo 21 de la Ley Núm. 10 de Indemnizaciones a Obreros, aprobada en 25 de febrero, 1918, prescribe:

" 'Art. 21.—Nada de lo contenido en esta Ley se interpretará en el sentido de privar al obrero lesionado, o a sus herederos de acuerdo con esta Ley, en caso de muerte, de la renuncia de las disposiciones de esta Ley, en cualquier tiempo antes de recibir compensación en virtud de la misma, y a reclamar y obtener daños y perjuicios de su patrono, de acuerdo con las disposiciones de ley antes de entrar ésta en vigor, cuando las lesiones sufridas por dicho obrero hubieren sido causadas por acto ilegal o negligencia criminal de su patrono (*willful misconduct*); *Disponiéndose*, que solamente en este caso de renuncia, tendrá el obrero comprendido en esta Ley, o sus herederos de acuerdo con la misma, derecho a ejercitar la acción de daños y perjuicios contra el patrono.'

"Esta última disposición parece indicar el único caso en que el obrero lesionado o sus herederos pueden ejercitar la acción de daños y perjuicios contra el patrono, o sea, cuando las lesiones sufridas por dicho obrero hubiesen sido causadas por el acto ilegal o negligencia criminal de un patrono. En tal sentido la transacción que celebre un patrono con el obrero sólo es obligatoria entre ellos y se limita a la acción que bajo tal artículo hubiera tenido el obrero para acudir a las cortes. Por sus palabras la renuncia no puede tener otro alcance. De otro modo la transacción en nada obliga a la Comisión de Indemnizaciones a Obreros, quien dentro de las circunstancias concurrentes en este caso tiene jurisdicción exclusiva para oír y resolver el caso en la forma que lo hizo."

Conforme puede verse de una lectura del estatuto, la ley de 1918 no tenía disposición alguna relativa a transacciones o convenios entre el obrero lesionado y su patrono. La corte en el caso de Nicot resolvió que el único caso o la única situación en que un obrero podía válidamente renunciar los derechos concedídosle por la ley era aquél en que el accidente ocurría por el acto ilegal o negligencia criminal del patrono, y que una transacción celebrada a base de cualesquiera otros hechos no era obligatoria para la Comisión de Indemnizaciones a Obreros. Era tan sólo en ese caso especial, y únicamente después de una renuncia, que el obrero podía entablar una acción de daños y perjuicios contra su patrono.

Bajo la ley de 1928, según fué enmendada, los obreros y los *patronos asegurados* podían someter sus transacciones a

la aprobación de la Comisión. *Patronos no asegurados* fueron intencionalmente dejados fuera de los preceptos anteriores. (Véase la sección 21.) De acuerdo con esta ley los patronos no asegurados estaban sujetos tanto a una acción civil como a una reclamación bajo el estatuto y tenían que pagar la mayor de las dos indemnizaciones.

Siguiendo el caso de Nicot, los patronos no asegurados bajo la ley de 1928 se hallarían en la misma posición relativa en lo que a la posibilidad de convenios, transacciones o compromisos se refiere, que todos los patronos bajo la ley de 1918. Esto significaría que toda vez que el estatuto no contiene precepto alguno respecto a convenios celebrados entre obreros y patronos no asegurados ellos no pueden, al tratar de transigir sus reclamaciones entre sí, privar a la Comisión de conocer del caso. Un fallo o sentencia de la Comisión es la regla en estos casos. La excepción debe aparecer claramente.

En el caso de Nicot el obrero explicó por qué había transigido. En el presente no existe tal explicación, mas de los autos se desprende que el beneficiario del obrero no sabía escribir, y en su consecuencia posiblemente tampoco sabía leer, y que transigió un caso de una lesión fatal por $700 cuando la suma mínima fijada por la sección 3, inciso 5 de la ley de 1928 era $1,000 y la máxima, $3,000. Mencionamos estos hechos para demostrar lo desventajosa que fué la transacción del beneficiario y para que salga a relucir la certeza del razonamiento del caso de Nicot.

Por las razones antes expuestas opinamos que la transacción celebrada en este caso no estaba autorizada por la ley de 1928, supra, y que por tanto la Comisión Industrial no quedaba obligada por ella.

*Las decisiones recurridas deben ser confirmadas.*

El Juez Presidente Sr. Del Toro no intervino.